*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NADJA NICHOLLE KIOGIMA,

Defendant-Appellant.

UNPUBLISHED
July 22, 2021

No. 353815
Leelanau Circuit Court
LC No. 2019-002005-FH

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant, Nadja Nicholle Kiogima, pleaded guilty to reckless driving causing serious impairment of a body function, MCL 257.626(3), and operating while intoxicated (OWI) causing serious impairment of a body function, MCL 257.625(5)(a). The trial court sentenced her to 38 to 60 months' imprisonment for each offense. Defendant appeals as on leave granted,[1] arguing that offense variable (OV) 3, concerning physical injury to a victim, was erroneously assessed at 25 points. Because we conclude that the trial court did not err by finding that at least one of the victims suffered a life-threatening injury, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In the late morning and early afternoon of June 26, 2019, defendant drove while heavily intoxicated.[2] Despite efforts by others[3] to dissuade and obstruct her from continuing to drive while

---

[1] *People v Kiogima*, 952 NW2d 906 (Mich, 2021).

[2] Defendant's blood alcohol content (BAC) 2 ½ hours after the accident was 0.286.

[3] After nearly being rear-ended by defendant and noticing that she was drunk, one witness called 911 and attempted to stand in front of defendant's car to prevent her from driving away, and another vehicle pulled up behind defendant's car. Defendant put her car in reverse, backed up, and drove around the witness. The witness described defendant as speeding up as she drove through the stop sign without stopping and into M-22, striking the other car. Another witness

drunk, defendant persisted and proceeded to blow through a stop sign, possibly accelerating into the intersection, when entering highway M-22 in Leelanau County. She collided with a car containing a family of four who were on vacation from the state of Wyoming. Defendant attempted to flee, but she was apprehended.

In the car defendant hit were Laura and Dwayne Meadows and their two young children, ages 3 and 1. Dwayne is a conservationist and Executive Director of Wyoming Wildlife Federation, and Laura is a veterinarian who works with both large and small animals. Both were seriously injured. According to defendant's presentence investigation report (PSIR), Dwayne "suffered a fractured vertebra in his back and facial injuries between his eyes due to his glasses striking him in the face at the time of the collision" and Laura "had neck injuries, broken ribs, a lung contusion and a herniated disc." At her plea hearing, defendant testified and admitted that the Meadows sustained serious injuries, which included Laura suffering around six broken ribs, a contusion on her lungs, and a herniated disc.

At the beginning of defendant's sentencing hearing, after the prosecutor stated that he just gave defense counsel a written victim impact statement, there was a brief recess to allow defense counsel to review the statement with defendant. Laura provided the victim impact statement, which provided, in pertinent part:

> The next minutes and hours [after the accident] were typical . . . back boards, ambulances, ultrasounds, x-rays, CT's, MRI's, hospitalization, opiates. My husband suffered compression fractures of L3 and L4 vertebrae, but thankfully nonsurgical. I was carted away with broken ribs, lung contusions, pneumothorax, seatbelt sign, and neck trauma. Most importantly, my kids were okay! They both had burns from the car seat harnesses and some bruises. They had ultrasounds and [one child] had some x-rays taken, but were released to the care of my in-laws while Dwayne and I were hospitalized.

> Dwayne and I pride ourselves on being strong, capable, and adventurous. This summer we have been weak and fragile. We relied on the support of our tremendous family for a few weeks as we weren't able to pick up and care for our kids like we had before. Healing for Dwayne's broken back was a combination of no jarring movement and no lifting. He wasn't able to even pick up [our eldest child] for over 2 months. I wasn't able to work for a month and I am still not able to do some of the more physically demanding services for my large animal clients. We are both nervous of physical demands of stacking and feeding hay that come with fall and winter ranch work.

> The physical injuries from this accident have been very difficult for Dwayne and I and no doubt will we continue to have lasting effects. . . .

---

indicated that defendant "gunned it." Someone else had called 911 regarding defendant's drunk driving one-half hour before the collision.

In the first 24 hours after the accident, I estimate over $60,000 in medical expenses. . . .

Following the recess, when the trial court asked defense counsel whether he was challenging the scoring of the guidelines, defense counsel replied, "No, sir." Defense counsel made no comments about the victim impact statement. Following sentencing, defendant filed a motion to correct an invalid sentence, arguing that the assessment of 25 points for OV 3 was not supported by the record evidence. The trial court denied defendant's motion.

Defendant filed an application for leave to appeal in this Court, which was denied for lack of merit in the grounds presented. *People v Kiogima*, unpublished order of the Court of Appeals, entered August 7, 2020 (Docket No. 353815). Defendant, acting in *propria persona*, filed an application for leave to appeal in our Supreme Court. In lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration as on leave granted. *People v Kiogima*, 952 NW2d 906 (Mich, 2021).

## II. ANALYSIS

The sole issue before us is whether the trial court erred by assessing 25 points for OV 3. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

"Under the statutory sentencing guidelines, the trial court must score the applicable offense and prior record variables to determine the appropriate range for the minimum sentence." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The trial court may also consider a victim impact statement. See *People v Earl*, 297 Mich App 104, 110; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014). When reviewing the record evidence, a trial court may make "reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *Id*. at 109.

OV 3 relates to "physical injury to a victim," and 25 points are properly assessed when a "[l]ife threatening or permanent incapacitating injury occurred to a victim[.]" MCL 777.33(1)(c). In assessing points for OV 3, the focus is not on the defendant's actions, or on whether the defendant's actions placed a victim in a life-threatening situation; rather, the question is whether the victim's injuries were life-threatening. *People v Chaney*, 327 Mich App 586, 590; 935 NW2d 66 (2019).

At the hearing before the trial court on defendant's motion to correct an invalid sentence, defendant's appellate counsel argued that there was no record of any injury that meets the standards

set forth in OV 3, being life threatening or a permanent incapacitating injury. Disagreeing, the trial court stated, in relevant part:

> . . .[D]efendant was involved in a motor vehicle accident resulting in the victims having, according to the PSIR, fractured vertebra in the driver's back and facial injuries between his eyes, his glasses struck him in the face at the time of the collision. His wife, who was another victim in the vehicle and passenger at the time, had neck injuries, broken ribs, a lung contusion, and a herniated disk, each of those on their own are very damaging things to happen to a human body, taken collectively I do think that they are very very serious.
>
> In looking at the victim impact statement[4] that was provided by the victims, which was very complete, I think that—there is support that these are . . . incapacitating, permanently incapacitating, or life threatening injuries given the fact that the impact statement indicates that physical injuries have been very difficult for both parties, and no doubt will continue to have lasting effects, discussion that they were strong capable adventurous people and have been rendered weak and fragile as a result of the accident itself. And, again, just the substance and collection of the injuries leads one to easily conclude that the injuries were life threatening or permanently incapacitating in support of the 25 points that have been scored in this case.

As earlier noted, Laura described her injuries as follows in her victim impact statement:

> The next minutes and hours [following the accident] were typical . . . back boards, ambulances, ultrasounds, x-rays, CTs, MRIs, hospitalization, opiates . . . . I was carted away with broken ribs, lung contusions, pneumothorax, seatbelt sign, and neck trauma. . . . Dwayne and I were hospitalized.[5]

In *Chaney*, 327 Mich App at 590-591, this Court stated that "we must give effect to the ordinary meaning of 'life-threatening' by requiring some evidence indicating that the injuries were, in normal course, potentially fatal." Upon review of the record, we conclude that the trial court did not clearly err to the extent it found by a preponderance of the evidence that the combination of Laura's injuries was life-threatening. Laura suffered significant chest injuries that included six broken ribs, a lung contusion, and a pneumothorax (collapsed lung), which required prompt medical attention and hospitalization. According to healthline.com, "[q]uick treatment of a pneumothorax due to significant chest trauma is critical. The symptoms are often severe, and they could contribute to potentially fatal complications such as cardiac arrest, respiratory failure, shock, and death." Thus, the trial court did not clearly err by finding that the combination of Laura's

---

[4] Defendant's appellate counsel acknowledged at the hearing that he had not seen a copy of the victim's impact statement.

[5] Although the prosecutor indicated at the motion hearing that there were "three inches of medical records that have been printed off," they are not part of the record. Regardless, the medical records are not necessary, due to the sufficiency of the existing evidence.

-4-

injuries was, "in [the] normal course, potentially fatal." *Id*. at 591. As such, the trial court properly assessed 25 points for OV 3 and defendant is not entitled to resentencing.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane M. Beckering
/s/ Mark T. Boonstra